## THE MADISON AVENUE BAPTIST CHURCH *a*. THE BAPTIST CHURCH IN OLIVER STREET.

*New York Superior Court; Special Term, April,* 1865.

DISSOLUTION OF RELIGIOUS CORPORATIONS.—POWERS OF THE SUPREME COURT OVER THEIR REAL ESTATE. — MORTGAGEES IN POSSESSION.

Religious corporations can only be dissolved by the Legislature. The consent of a majority of the corporators, with the direction and order of the Supreme Court, will not effect a dissolution.

The power of the Supreme Court over the real estate of a religious corporation is limited to the sale thereof, and does not extend to authorize a gift or surrender of such property.

The purchase of a mortgage, on which no default has been made, by a party in the wrongful possession of the mortgaged premises, gives him no right to hold the property as mortgagee in possession.

Trial by the court.

The majority of the congregation of the plaintiffs' church, through their officers, agreed with the congregation of the Oliver-street Baptist Church that the former congregation should cease to exist; that the plaintiffs' property should be conveyed to the defendants, and the two congregations be united and worship together in the Madison Avenue Church. An order was made in the Supreme Court, upon the application of the parties, conffirming this arrangement, and directing a transfer and conveyance in conformity thereto. Under this conveyance the defendants entered into possession of the premises, and subsequently bought in a mortgage on the premises, on which the principal was already due, but on which no default in payment of interest had been made. After the action was commenced

they bought in a second mortgage. The defendants also paid some debts of the plaintiffs. The Madison Avenue Church having brought an action of ejectment to recover possession of their church, the defendants set up the above facts in defence, and claimed to hold under the conveyance and as mortgagees in possession.

McCunn, J.—This is a controversy between two religious corporations.

The Madison Avenue Baptist Church brings ejectment against the Baptist Church in Oliver-street, to recover possession of their church-property in Madison Avenue.

The congregation of the Oliver-street Church allege that they should not be ejected, because they say the two corporations or societies, by a majority of their members, at regular meetings, agreed that the church or corporation in Madison Avenue should cease to exist, and that all its property should be merged in or conveyed to the corporation of the Oliver-street Church; and that the members of both churches should worship together thereafter in the Madison Avenue Church; and that the Supreme Court, upon the application of the parties, directed an order and transfer to that effect. They further claim to hold the property as mortgagees in possession.

The Madison Avenue people allege, in answer to all this, that the proceedings taken by the majority of the two congregations, and the action taken by the Supreme Court thereunder, were insufficient, in law, either to dissolve the corporation of the church in Madison Avenue, or to convey their property, and that the mortgages under which defendants claim to hold possession were not due at the time of the commencement of this action.

The only power that can dissolve a religious corporation is the power that creates it, or brings it into existence, to wit, the Legislature, or a Court deriving authority therefrom for the purpose; and that power not having been invoked in this case; the joint efforts of the two corporations, and the action of the Supreme Court in the premises, were ineffectual to accomplish the purpose. Religious societies have no power or authority to dispose of their real estate, except what is contained in the Revised Laws of 1813; and agreeably to this Act, it is lawful

for the Supreme Court, upon the application of any religious corporation, to make an order for the sale of the real estate of said corporations, and to direct the application of the moneys arising therefrom to such uses as shall be most to the interest of the society to which the real estate belonged; but it will be thus seen, that the authority conferred by the statute is not only confined in terms to a sale, but the intention of the Legislature is placed beyond doubt, by requiring the Court, when it orders a sale, to direct the proper application of the proceeds of such sale. Now, it is quite clear that the jurisdiction conferred on the Supreme Court under this act, being of a special and statutory character, is not a part of its general jurisdiction, and, therefore, the court cannot exceed the limits marked out by the statute; and if it does, its proceedings will be entirely null and void. (Wheaton a. Gates, 18 *N. Y.*, 395.)

The proceedings in this case show an attempt to form a union between the plaintiffs' and the defendants' societies, but the mode adopted for accomplishing that object resulted, if valid, in the complete extinction of the plaintiffs' church and of their corporate existence, and the transfer of all their property to the defendants; and that, too, without any consideration. As it appears that the sum mentioned in the deed was merely nominal, the conveyance, therefore, by plaintiffs' society, was an absolute gift to the defendants. Whereas, the defendants claim to be absolute owners of the property by purchase, and, with a view to bring the conveyance within the authority of the statute of 1813, they expressly claim to treat the transfer as a sale.

The order, however, did not direct a sale, but a conveyance, and the conveyance thus directed and made was wholly destitute of the distinctive element of a sale, and was, therefore, null and void.

There is another objection to the defendants' title, which is equally fatal. In the case of Wheaton a. Gates, the Court of Appeals established the important principle, that the 11th section of the Act of 1813 does not confer upon the courts an unlimited authority, even to order a sale of the real estate of religious corporations; that it merely adds, in fact, another requisite to the validity of a sale; and that the court can only order such a sale as it would have been right and lawful for

the trustees themselves to make, if there had been no special statute upon the subject.

It was accordingly held in that case, that an order directing a sale of the real estate of a religious corporation, for the purpose of paying its debts and dividing the surplus among the pew-owners, was wholly void.

The court says: "The trustees had no authority to distribute the property of the society among its individual members, or any class of them. Their duty was to preserve and administer it in the promotion of the purposes for which the corporation was created, and that it was not in the power of the trustees, or a majority of the members of the society, or the court, or all of these authorities together, to abolish the corporation or dissolve the society."

This decision is directly applicable to the present case, and its authority must be controlling. We have seen that the direct effect and object of the so-called union between the plaintiffs and defendants was to abolish the plaintiffs' corporation, and dissolve their society ; and although their property was not to be divided among their individual members, as in the cases cited above, it was to be given to another religious organization, which is equally objectionable.

It is sufficient for me to say, that if they desired to accomplish a union of the two churches, their proper course was to apply to the Legislature.   (*Willard's Eq. Jur.*, 374–5.)

I have been thus brief in disposing of the first question presented, believing that the principle involved is fully discussed and settled in the case of Wheaton and Gates, and I think the remaining questions in this case can be as easily disposed of.

The defendants alleged and offered to prove that on the 2d of May, 1863, they purchased a mortgage for $12,500 on the property in question, which, by its terms, became due on the 1st of February, 1860, and that on the 17th of October, 1863, they purchased another mortgage on the same property for $30,000, and they claim the right to hold possession of the property until their mortgages are paid. The second one was not acquired until after this action was commenced, and although the first one was acquired before the commencement of the action, yet there was no default in the payment of either principal or interest until afterwards.

To hold possession of property simply as a mortgagee is not entitled to favor.

A mortgage is now regarded in this State as simply the security for the payment of money, to be made effectual by the process of foreclosure. This is the rule laid down in the case of Waring *a.* Smith (2 *Barb. Ch. R.*, 119, 135), in which the chancellor says that the only right a mortgagee has in the land itself is to take possession thereof, with the assent of the mortgagor, after the debt has become due and payable, and to retain such possession until the debt is paid. (See also Russell *a.* Shy, 2 *Blackf., Ind.*, 575–579; Levy *a.* The Mayor, &c., of New York, N. Y. Superior Ct., February, Gen. Term, 1865.)

It will be seen, therefore, that the defendants had no right of possession when this action was commenced, for neither of the mortgages was then due. Nor did the mortgagees originally enter as such at all, for neither of the mortgages was acquired till long afterwards, nor have they ever been in possession, with the assent of the mortgagor, after the mortgages became due. They must therefore be left to their remedy of foreclosure.

In regard to the bonds held by the defendants, secured by a mortgage given to other parties in trust, it is only necessary for me to say, that the defendants do not hold the mortgage.

The defendants also allege and offer to prove, that they have paid certain of the plaintiffs' debts, pursuant to the terms of the attempted union, and for the money thus paid they are understood to claim a lien upon the property.

If this claim is well founded, it would furnish the means of rendering the statute a complete nullity, for it would be useless to require religious corporations to apply to the court, before making a direct sale of their property, if they may indirectly, by creating liens and incumbrances upon it, dispose of it at pleasure.

I know it has been held that a vendee, who has advanced money on the faith of a valid contract for a conveyance, is entitled to a lien on the property for the money so advanced. But in the case of religious societies there cannot be any valid contract for a conveyance; the statute absolutely disables them from making such contracts. A purchaser from a religious society must rely solely upon the order of the court, and the

deed executed in pursuance of it; and if these are both void, as in the present case, they must be void to all intents and purposes. And in addition to all this, the settled rule is to the effect that there can be no lien for money paid upon the faith of an invalid contract. (Ewing a. Osbaldiston, 2 *Mylne & C.*, 53.)

And, further, the money having been paid in pursuance of an arrangement with the plaintiffs, and by their implied authority, it must be considered as paid to their use, and may either be recovered by an action, or set off against the rents and profits received by the defendants.

For these reasons, I therefore hold that notwithstanding the action of the majority of the members of the two corporations, and the action of the Supreme Court thereunder, the plaintiffs, the Madison Avenue Baptist Church, still exist as a corporation or society, and that the alleged conveyance made by them to the Baptist Church in Oliver-street, of the property in question is null and void, and of no effect; and, further, that at the time of the commencement of this action the mortgages under which the defendants claim to hold possession as mortgagees were not due, nor was any part thereof due, nor any interest on the same, and that, consequently, the claim to possession in that respect is not valid in law; and finally, that the defendants have no lien upon the premises for moneys advanced by them under the alleged arrangement, and consequently the plaintiffs are entitled to judgment for the possession of the property, with costs.

Judgment for the plaintiffs accordingly.